IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

VICTOR LEE JONES, SR.,
    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECUIRTY,
    Defendant.

Case No. 4:16-cv-04245-JEH

**Order**

In April 2013, the Plaintiff, Victor Lee Jones, Sr., applied for supplemental security income ("SSI"), alleging a disability onset date of July 8, 2010. The state agency denied his application initially and on reconsideration, and the Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). In June 2015, the Plaintiff, represented by counsel, testified at a hearing before an ALJ, as did an impartial vocational expert. In July 2015, the ALJ issued a decision finding the Plaintiff not disabled. The ALJ's decision became final and appealable in September 2016, when the Appeals Council denied the Plaintiff's request for review. *See* 20 C.F.R. §§ 416.1555, 416.1581. The Plaintiff now seeks judicial review of the Commissioner's decision. For the reasons stated, *infra*, the Plaintiff's motion for summary judgment (D. 12)[1] is DENIED, and the Defendant's motion for summary affirmance (D. 14) is GRANTED.[2]

---

[1] Citations to documents filed in this case are abbreviated as "D. __ at ECF p. ___."
[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (D. 10 & 11).

# I
## A

The ALJ concluded that Jones had the following severe impairments: Gout, hypertension, diabetes mellitus, history of stroke, chronic obstructive pulmonary disease, and left knee degenerative joint disease. (D. 7 at ECF p. 27). Notwithstanding these severe impairments, the ALJ also concluded that Jones had the following residual functional capacity ("RFC"): "[L]ight work as defined in 20 CFR 416.967(b) except lift and carry 20-pounds occasionally and 10-pounds frequently and stand/walk/sit for 6 hours each out of an 8-hour workday. He could occasionally climb ramps and stairs, but could not climb ladders, ropes, or scaffolds." *Id.* at p. 29.

The ALJ reasoned in support of this conclusion as follows:

> The undersigned does not find the testimony of the claimant, that he is unable to sustain any full time work activities, supported by the record. Inconsistencies in the record regarding the claimant's symptoms contribute to a conclusion that the claimant is not fully credible in his allegation of a totally disabling condition. While the record supports a finding that the claimant has severe physical impairments, the record does not support a finding that his physical impairments would preclude all sustained work activity. On cardio-pulmonary examination, the claimant's lungs were clear to auscultation bilaterally, he had a regular heart rate, and rhythm with no murmurs, gallops, or rubs (Exhibit 7F/14). Physical examination of the claimant's extremities was negative for edema (Exhibit 7F/14). In addition, a concurrent x-ray of the claimant's knees secondary to complaints of knee pain and injury showed mild degenerative changes, but no acute bone abnormalities were identified (Exhibit 3F/12 and 1lF/10). Additionally, a simultaneous magnetic resonance imaging (MRI) of the claimant's brain showed mild atrophy and evidence of an old lacunar infarct in the left centrum semi ovale, but no acute intracranial abnormalities (Exhibit lOF/53). Moreover, a contemporaneous CMP revealed an HgbAic of 5.8 %, which is indicative of well controlled diabetes mellitus (Exhibit lOF/36). While diagnostic testing does reveal some significant findings, also noted

> above, these must correlate with clinical examination. The medical evidence in this case does not clearly support a finding that the claimant is incapable of performing work within the adopted residual functional capacity.
>
> The undersigned also considered the opinions of the claimant's physicians and the state agency physicians. The record supports the State Agency's findings that the claimant does not meet or equal a Listing and that he is not disabled. With respect to the assessment of the claimant's physical impairments, the state agency consultants found that the claimant had no severe impairments; however, the undersigned in affording the claimant every reasonable benefit of the doubt, finds there is sufficient evidence to conclude that the claimant has severe impairments.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

*Id.* at pp. 33-34.

These findings contrasted with Jones's testimony regarding the limitations he experienced. For example, he stated his doctor took him off work after his stroke in July 2010. (D. 7 at ECF p. 53). He explained that he was having multiple strokes and thought there had been about 12 of them. He stated he had also suffered from gout after the stroke. He testified his gout was painful and he could not walk. He stated he had pain in his feet and when he had a flare of gout he could not walk or even put his foot on the floor. He said he has flares of gout at least every month and they sometimes last a couple of weeks. *Id*. He explained his medication did not help with the frequency or duration of the flares. He stated there are at least seven days in a month that he cannot walk. *Id*. He stated his

doctors had tried medication to prevent the flares, but it had not worked. *Id.* at 53-58.

Jones explained that his arthritis had gotten a little worse since he quit working. He noted he gets swollen joints. He pointed out his swollen left hand at the hearing and explained that the swelling makes it hard for him to grab objects. He stated he had trouble putting on shoes when he had a gout flare. He stated he had neuropathy in his left leg which caused constant pain. He said lying down relieves his pain. He stated he could stand less than ten minutes and could sit about 30 minutes before he would have to get up. He testified that he lies down during the day most of the time. He said some days when his pain is better he can go to the store. He stated he has about ten good days a month. He testified his wrists swell up about once a week and he could not lift a gallon of milk. He testified the maximum he could lift was a gallon of milk. (D. 7 at ECF pp. 57-63).

Jones testified that he does not pick up his one year old child. He stated his doctor had given him a referral to specialist for his hands. He testified he did not use a cane and could walk a block to the bus stop. He testified he has diabetes and does not have to take medications as long as his diet is right. He stated he had not ridden a bicycle for a year. He said he is never alone with his child because the child's mother is always with her. He stated he has trouble sleeping and only sleeps about three hours a night. He stated he cooks when he can – about ten days a month. He said his sister goes to the store for him and he had last been to the store about a month prior to hearing. He testified he helps with the housework sometimes when he is not in pain - about ten days a month. He stated he does not help with yard work or mowing the lawn. He stated sometimes his roommate had to get his clothes from down the hall because he could not walk that far. He stated he also needed help getting to the shower sometimes. He stated he watches television and uses a cell phone. (D. 7 at ECF pp. 64-69).

In contrast to Jones's testimony was the objective medical evidence presented. First, two state agency physicians found that Jones had *no* severe physical impairments. There exist no other medical source opinions in the record to contradict these conclusions: no treating sources offered any opinions in this case.

Also in the record and considered by the ALJ are a number of treatment notes from May 6, 2013 through May 12, 2015, covering twelve different visits to various medical professionals for various reasons. Many of the visits addressed Jones's hypertension, which was generally controlled by medication. Likewise, Jones complained of gout on six of those visits, although he only had active symptoms of a gout flare-up at three of those visits. Moreover, those flare-ups appeared to be related to Jones's failures to take his medication.

**B**

In this Court, Jones argues that the ALJ erred by failing to consider the proper factors when assessing Jones's subjective symptoms and RFC. Specifically, Jones faults the ALJ for using the wrong legal standard and not explaining how she arrived at her RFC, although he acknowledges that she devoted five pages of her decision discussing the medical evidence. He also faults the ALJ for not incorporating any of the state agency physician opinions into her RFC and for not ordering a consultative examination.

The Commissioner responds that substantial evidence supports the ALJ's decision. The Commissioner notes that Jones had the burden of submitting medical evidence establishing the severity of his impairments and RFC, but he failed to meet this burden. The only medical source opinions of record concluded that Jones had no severe impairments. The very evidence Jones cites in his argument was considered by the ALJ in formulating the RFC. Finally, the

5

Commissioner argues that the ALJ did not abuse her discretion in refusing to order a consultative examination.

## II
### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566 (1986). The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be

a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id*. An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Jones claims error on the ALJ's part at Step Four.

**B**

The ALJ did not commit error in this case. First, the ALJ applied the correct legal standard. Although Jones faults the ALJ for requiring Jones to prove "complete and total disability," reading the ALJ's decision as a whole, it is clear that she applied the correct legal standard, to wit: requiring Jones only to prove that he could not perform substantial gainful activity by reason of a medically determinable impairment which can be expected to result in death or which has lasted or can be expected to last for not less than twelve months. *Maggard v. Apfel*, 167 F.3d 376, 377 (7th Cir. 1999), *citing* 42 U.S.C §§ 423(d)(1)(A)(2010) and 423.1382c (a)(3)(A)(2010).

It is equally clear that the ALJ adequately explained how she arrived at the RFC she formulated. As even Jones acknowledges, the ALJ recounted in detail the medical evidence in the record. That medical evidence simply did not support Jones's subjective claims of impairment. The ALJ considered Jones's assertion that his physical problems made it difficult for him to perform some of his daily activities. The ALJ also considered the evidence he cited in his brief, including that he had a swollen toe and pain from gout flares and that his CT scan showed chronic changes in his brain relating to his stroke. However, the medical evidence shows that Jones's gout flare-ups occurred when he ran out of medication or needed a new medication because insurance did not cover his previous one. Indeed, Jones has not pointed to any objective evidence suggesting that medication could not control his gout. As the Commissioner argues, a claimant is not disabled if his condition is controllable by medication or other treatment. *Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006). The medical evidence shows only that Jones had a few flare-ups of gout over a multi-year period, during which time there were long periods it was controlled by proper medication. All this evidence was in stark contrast to Jones's testimony at the hearing which would

have the ALJ believe that he was essentially bedridden for many days of the month. Nothing in the medical record supports that assertion.

As for the CT scans of Plaintiff's brain post-stroke, the ALJ acknowledged that while they showed mild atrophy and chronic changes in his white matter, they did not show any intracranial abnormalities and that nothing changed between May 2013 and April 2014. The ALJ also articulated that while the record showed that Jones's diagnostic testing "reveal[ed] some significant findings," those findings did not "correlate with [Jones's] clinical examination" (D. 7 at ECF p. 33). Indeed, as the ALJ noted, all of Jones's neurological examinations were normal. Moreover, Jones has not articulated how the CT scan medical findings translated to limitations.

These are just two examples of the consideration the ALJ gave to the medical evidence, which serve to demonstrate that she considered all the evidence before her and weighed it when formulating the RFC. The bottom line here is that Jones would have this Court re-weigh the evidence, something it cannot do. *See Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). Moreover, even this Court could reweigh that evidence, its conclusion would be no different than the ALJ's.

Strangely, Jones also argues that the ALJ did not incorporate any of the state agency physician opinions into her RFC. However, as already noted, the state agency physicians found that Jones *had no severe impairments*. Therefore, had the ALJ incorporated the opinions into her RFC, that RFC would have been even less restrictive than the one she actually formulated. Thus, this argument goes nowhere; the ALJ was generous with her finding of severe impairments at Step 2 of the sequential process, given that not a single medical source had concluded Jones any severe impairments.

Jones's final argument is that the ALJ should have ordered a consultative examination, but she did not abuse her discretion in declining to do so. Already,

the two state agency examinations had found no severe impairments. Nor had any treating physician or medical source provided any opinion whatsoever regarding Jones's impairments or functional capacity. Moreover, as already discussed, the objective medical evidence revealed mostly normal examinations and results, with occasional acute medical issues of uncertain longevity. Given the evidence already in the record, it was reasonable for the ALJ to conclude that a consultative examination would have provided nothing new. She therefore did not abuse her discretion in refusing to order one.

### III

In sum, the ALJ's RFC in this case was supported by substantial evidence, given the objective medical evidence in the case, the state agency physician opinions, the lack of treating source opinions, and the marked contrast between what the objective medical evidence demonstrated and the degree of limitations alleged by Jones. Accordingly, the Plaintiff's motion for summary judgment (D. 12) is DENIED, and the Defendant's motion for summary affirmance (D. 14) is GRANTED.

Judgment shall enter in accordance with this Order, and this case is terminated.

*It is so ordered.*

Entered on September 6, 2017

s/Jonathan E. Hawley
U.S. Magistrate Judge